In Special Term—1855.

SPENCER, J. presiding.

MATILDA H. CARTER administratrix, of HANNAH HAHN deceased,
*vs.*
MARK BUCKINGHAM, administrator of EMANUAL HAHN, deceased et al.

Husband and wife brought an action in their joint names, to recover the amount due on a note given to the wife whilst sole; husband left the note with an attorney for collection, and took a receipt in his own name therefor; a joint judgment was rendered; upon which no execution issued. Husband received interest, and a part of the principal, and then made an agreement with defendants, by which they were to pay ten per cent. interest on the judgment. The wife, just before her death, expressed a desire to the husband that "he should collect the note," that she "wished the business settled up, and wanted him to have the money." Nothing was done however. The wife died—then the husband died, and administration was taken out on his estate. His administrator sued out a *sci. fa.* to revive the judgment. Afterwards, letters of administration were granted on the wife's estate—and her administratrix brings an action to recover the balance due on said judgment, and to enjoin the husband's administrator from further proceeding. Held,

That in Ohio, obtaining judgment, or taking *new security*, or transferring or releasing the claim for a valuable consideration, is a good reduction of a wife's chose in action into possession so as to extinguish the wife's interest; but obtaining judgment in *their joint names*, is not of itself sufficient for that purpose.

That in the above case, the wife's administratrix had the right to sue in her own name, under the Code, and recover the amount due from the *original debtors*, without waiting for its collection by the husband's administrator.

That to constitute a valid gift by parol *inter vivos*; or a *donatio causa mortis*, there must be an actual delivery of the thing given, or that which is equivalent; accompanied by an intent to part with the title, except, that in case of a "*donatio causa mortis*" the gift is conditional.

This case was submitted to the court upon the following state of facts. Emanuel Hahn after his intermar-

riage with Hannah Colvin, brought a suit in their joint names to recover the amount due upon a note given to her when sole, by the defendants Dennison and others. On leaving the note with his attorney for collection, he took a receipt therefor in his own name. A joint judgment was rendered in the action, for $1,500; upon which no execution was issued. The husband received the interest upon the judgment up to February 1851, and $300 of the principal: and then made a parol agreement with the defendants, by which they were to allow on the judgment, interest at the rate of ten per cent.; upon which it was claimed they were to have time upon the judgment; but of this there was no certain evidence.

The wife was in a very infirm state of health for the last two years of her life; which was the occasion of heavy bills against the husband, on her account—chiefly for medical aid. Some two or three weeks before her decease, (which occurred in June '51) she expressed much anxiety that the amount due upon the judgment should be collected; and in a conversation with her husband told him, "that she did not think she would live' long, and wanted him to go down to the city and collect *that note*—that she wished the business settled up; and she wanted him to have the money." Before anything was done however, the wife died—afterwards the husband died, and the defendant was appointed his administrator, and sued out of the Common Pleas a *scire facias* to revive the judgment, which suit was still pending. Since then, administration having been granted to the plaintiff on the estate of the wife, she brought the present action to collect the amount due upon the judgment, and to prevent collection of the same by the defendant.

Matilda H. Carter *vs.* Mark Buckingham.

SPENCER, J.

The rule is well settled in Ohio, that the husband surviving his wife is not entitled to her choses in action, unless he reduce them into actual possession, or do some equivalent act; as, obtaining judgment, or taking a new security, in *his own name*; (either of which merges the original consideration) or, transferring or releasing the same for a valuable consideration. But, the obtaining a judgment in the joint names of himself and wife, does not of itself operate as an extinguishment of the wife's interest in the original cause of action; nor is it regarded as equivalent to reducing the subject into possession; consequently, if the wife survive the husband in such case, the whole judgment belongs to her, as well at law, as in equity.

On the other hand, if the husband survive the wife, the whole debt at *law* becomes his by the survivorship; so far forth, that he is entitled to collect the same in his own name; but in the latter case, it must be accounted for to the use of his wife's representatives; for the debt being in fact uncollected during coverture, remained the wife's up to the time of her decease, and on his death, the right and duty of such collection, at law, would devolve upon his representatives.

Unless therefore, some other act of appropriation to the sole use of the husband, besides that of obtaining the judgment, can be shown, the plaintiff, as the representative of the wife, having the *beneficial* interest in the judgment, is entitled under the Code to bring a suit upon it in her own name, and recover the amount due from the original debtors, without waiting for its collection by the representative of the husband.

And first, it is claimed on the part of his representative,

that the circumstances of the husband's taking a receipt for the note in his own name, at the time of placing it in the hands of his attorney for collection; of bringing the suit; of receiving interest on the judgment, and part of the principal during the life of his wife; and the making of a contract with the debtors for farther time, and for receiving a higher rate of interest on the debt, than that reserved in the original note; were such acts of appropriation, as reduced the debt in contemplation of law into the possession of the husband. The obvious answer is, that all these acts show nothing more than an effort on the part of the husband, to obtain *possession* of his wife's right, and to subject it to his own use. They only resulted in partial success; and to that extent his right was complete. They did not, however, in any wise change or purport to change, the condition of the original debt, nor of the judgment founded upon it.

2. It is claimed, that the declarations made by the wife to the husband, shortly before her decease, were intended as an appropriation by her of the debt, to his sole use; either, as an absolute gift, *inter vivos;* or as a *donatio mortis causa*, to become absolute on her death. Now it does not appear to us, that the language used by the wife on this occasion, can be fairly construed to express an intent to divest herself immediately of all interest in this judgment; so that if her husband had died first, his representative should have the benefit of it, to the exclusion of herself. The words used by her, were not those of *grant*, in the present tense as, *"I give,"* but of desire, looking to the future,—*"I want* you to go and collect that debt, *&c.*, and have the benefit of it—I want the business settled up; " showing by this last expression her great

Matilda H. Carter *vs.* Mark Buckingham.

anxiety to have the debt collected, before her decease. In which case, it would belong to her husband by operation of law. This was the language of *entreaty*, urging the husband for his own sake, to collect and appropriate the debt; not that of *gift*, looking to an immediate destruction of *her own right*. A *gift*, to be valid, must pass by delivery, or that which is equivalent, at the *time* when . made; and must be by words expressing a present change of ownership in the thing given; not, an intention in the future. It must be made by words and acts which are not revocable. Yet it will hardly be pretended, that the words used in the present case were not revocable at any time before the debt was collected; or that they might not have been recalled by the wife, without any breach of good faith, or propriety. If so, there was clearly no gift.

But if, for the reasons thus given, this transaction cannot be supported as a gift, *inter vivos*, so neither can it be sustained as a *donatio mortis causa*. To support *either*, the act of giving and the change of possession must be *immediate*. 2 *Ves. Jr.* 120. There is this difference however between the two classes of gifts; the former is *absolute*; the latter is *conditional;* to take effect only in the event of the donor's death. To make a valid transaction of the latter kind, language must be used, denoting that the gift is not to take effect except in the event of the donor's death. Tote *vs.* Hilbeth, 2 *Ves. Jr.* 121; 2 *Bl. Com.* 514. But, in the present case, if a gift was intended at all, it was *absolute*, not *conditional*. No language was used, from which it can be gathered that the donor intended the gift to be operative, only in the event of her decease. Indeed, the circumstance of her approaching death was only alluded to by the wife, as an inducement to her husband to be active in the collection of the debt.

On the whole, therefore, we are of opinion that the plaintiff is entitled to a recovery against the original *debtors*; and that the husband's representative should be enjoined from further proceeding to collect the judgment.

Judgment accordingly.

MINER, CLARK & OLIVER for plaintiff.

STRAIT & HOLLISTER for defendant.